# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br>v.<br><br>COUNTY OF MILWAUKEE,<br>DAVID A. CLARKE, JR.,<br>XAVIER D. THICKLEN, and<br>JOHN/JANE DOE,<br><br>                    Defendants. | Case No. 14-CV-200-JPS<br><br><br><br>**ORDER** |

**1.      INTRODUCTION**

On December 1, 2016, the Court denied summary judgment to Defendants County of Milwaukee (the "County") and David A. Clarke, Jr. ("Clarke") (collectively, "Defendants") on Plaintiff Jane Doe's ("Doe") sexual assault claim. (Docket #157). In addition to that claim, Doe also pursues a claim that Defendants instituted an unconstitutional policy for Milwaukee County Jail ("Jail") inmates, namely that female inmates would be shackled during childbirth. (Docket #104 at 16). This was originally presented as a class claim, *id.* at 10-14, but on March 20, 2017, Doe notified the Court that she would not seek class certification, (Docket #172). That same day, Defendants filed their second motion for summary judgment, this time addressing Doe's individual shackling claim. (Docket #173). Defendants argue that this claim must be dismissed because Doe did not exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). That motion is fully briefed, (Docket #174, #183, and #185), and for the reasons stated below, it will be denied.

**2.      STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.  **RELEVANT FACTS**

The following facts are gleaned from the parties' collective factual briefing. They have been construed, as required by the standard of review, in a light most favorable to Doe. In February 2013, Doe began her incarceration in the Jail. She was in the early stages of pregnancy upon her arrival. Doe was shackled for all hospital visits while in the Jail's custody. This included ten pre-natal care appointments between April and October 2013, and one post-partum visit on October 25, 2013.

On October 4, 2013, she gave birth while still in Jail custody. As before, while at the hospital, Doe was shackled. The shackling remained constant throughout Doe's labor, deliver, and recovery. Doe's attending midwife asked the Jail guards, who were in or near the delivery room, to remove the shackles, but they refused. The guards said that the shackling was "proper protocol" and the midwife understood that there was no way to have the shackles removed. Nevertheless, the guards agreed to shift the shackles from one wrist or ankle to another upon request. The leg restraint was also removed for about ten minutes during Doe's actual delivery at the request of medical personnel.

Prior to her hospitalization for the birth, Jail guard Xavier D. Thicklen ("Thicklen") had sexually assaulted Doe three times. When she returned to the Jail on October 6, 2013, Doe was housed in the infirmary for a time. Thicklen assaulted her twice while she was in the infirmary. The first was a few days after the birth, and the second occurred in November 2013. On December 4, 2013, Doe was transferred out of the Jail.

During Doe's labor and delivery, the Jail's shackling policy provided that inmates in the hospital should be cuffed to their bed at the hand and leg. The policy left no discretion for guards to decide whether this amount of shackling was necessary in any particular instance. If guards received complaints about such shackling, they were not required to document them. The parties dispute the effect that shackling had, or potentially could have had, on Doe's childbirth. This is immaterial to the present motion, which deals only with the grievance process, and does not address Doe's substantive complaints about the shackling policy.

The Jail's grievance policy permits inmates to file grievances for health issues. It states that a grievance should only be filed after "you have addressed the problem with the dorm officer and are not satisfied with the result." (Docket #178-1 at 2). The policy further provides that grievances should be completed on a standard form and deposited "in the designated locked box located at the workstation," which is presumably somewhere inside the Jail. *Id.* at 3. The Jail's grievance policy places no time limits on the filing of grievances. It is also silent on how an inmate should proceed with a grievance if they were transferred to a different facility before a grievance form could be filed.

Doe filed a total of fifteen grievances while at the Jail, mostly for mundane issues such as disrespectful guards or bugs in her cell. Doe did not

file a grievance regarding being shackled during any of her hospital visits. The only grievance Doe filed after the birth concerned Thicklen's assaults. She submitted the grievance on December 3, 2013, the day before she was transferred.

4. **ANALYSIS**

Defendants move for summary judgment on the ground that Doe failed to exhaust her administrative remedies before filing the instant lawsuit. The PLRA establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and she must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001).[1] The exhaustion requirement is not waived merely because the prisoner believes the grievance process will be futile, or if the process does not offer the remedy she seeks, such as money damages. *Booth v. Churner*, 532 U.S. 731, 740-41 and n.6 (2001). The two primary purposes of this exhaustion requirement are limiting frivolous lawsuits and permitting correctional facilities to address issues prior to litigation, hopefully obviating the need for a lawsuit. *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004). Failure to exhaust administrative remedies is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

---

[1]Doe does not dispute that she was a "prisoner" within the meaning of the PLRA, and was therefore subject to the exhaustion requirement. *See generally* (Docket #183); 42 U.S.C. § 1997e(h).

The Seventh Circuit's recent decision in *White* controls the disposition of Defendants' motion. *White v. Bukowski*, 800 F.3d 392 (7th Cir. 2015). White was pregnant when she was arrested and taken to jail. *Id.* at 393. Within two weeks she began labor and was taken to a hospital. *Id.* The baby was born with severe birth defects. *Id.* at 394. White returned to the jail several days later. *Id.* Four days after her return, White was transferred to a different institution. *Id.* White sued jail officials for, *inter alia*, failing to provide proper prenatal care and secure prompt transport to the hospital. *Id.* The defendants argued that White had not exhausted her administrative remedies, and the district court granted judgment to them on that ground. *Id.* at 393.

The Court of Appeals reversed that ruling, finding that White did not have administrative remedies "available" to her as required by the PLRA. *Id.* at 395-96; 42 U.S.C. § 1997e(a). It began by noting that "[t]he purpose of a prisoner's filing a grievance is to obtain a change of some sort—to obtain better medical care, for example." *White*, 800 F.3d at 394. In White's case,

> suppose the plaintiff suspected that [the birth defects] were attributable to mistreatment that she had received in the jail, either a lack of prenatal care during her eleven-day stay there or excessive delay in transporting her to the hospital. Still, what good would it have done her to file a grievance? She wasn't about to become pregnant again, and in fact had just a few more days in the jail. What could she have gained from filing a grievance? We can't find an answer.

*Id.* at 394-95. The court distinguished the Supreme Court's prior holdings in *Porter v. Nussle*, 534 U.S. 516 (2002), and *Booth,* 532 U.S. 731, which suggested that "as long as there is something the jail or prison could do in response to a grievance, even if it is not the specific relief sought by the prisoner, a grievance must be filed or the prisoner loses his right to sue." *Id.* at 395. The Court of Appeals held that in White's scenario, jail officials could not take

any action to remedy their alleged maltreatment because it was completed long ago. *Id.* Filing a grievance post-birth for improper pre-birth care would have been an "academic" endeavor, since "[t]here was no remedy within the power of the jail to grant for the baby's birth defects." *Id.*

The court also addressed the rule in other circuits that "even if the jail or prison can do nothing whatever for the complaining prisoner, and even if that's obvious to a prisoner who not unreasonably believes himself to be a victim of deliberate indifference to a medical or other legitimate need—the prisoner must file a grievance if he is to preserve his right to sue." *Id.* In *White*'s view, this rule is "tantamount to making prisoners who want to file civil rights lawsuits serve as ombudsmen—as a prerequisite to suing, such a prisoner would have to file a grievance that sought a remedy inapplicable to his or her personal situation, though maybe helpful to other prisoners." *Id.* at 396. The court refused to follow it in White's case because the plain text of Section 1997e states that the "availability" of remedies must be to the complaining prisoner herself. *Id.*

*White* applies squarely to Doe's claim. Doe complains that Defendants' shackling policy harmed her during her labor, delivery, and immediate post-partum care. (Docket #104 at 10-13). Defendants' allegedly harmful shackling thus concluded upon the birth of her daughter, and so "[s]he had no opportunity to grieve [the shackling] until after the harm done by it was complete and could not be undone by the defendants." *Id.* at 396. As noted in *White*, pregnancy and childbirth while in state custody is rare and unlikely to be repeated. *Id.* at 395. Further, Doe was under no obligation to file a grievance on behalf of any pregnant inmates who may suffer under the shackling policy in the future, as such action would offer no benefit to Doe herself. *Id.* at 396. In other words, *White* tied the "availability" of an

administrative remedy to the logical efficacy of the "remedy." If it was impossible for a remedy to help an inmate, it could not be considered "available." *Id.* at 395. In both White's and Doe's cases, "[t]here was no remedy within the power of the jail to grant for the [alleged harms]," and thus no remedies were "available" to either within the meaning of the PLRA. *Id.*

Defendants' attempts to distinguish *White* are unavailing. First, they assert that unlike White, who went into labor soon after her incarceration, Doe had months of hospital visits prior to her labor and delivery. She was shackled each time in the same manner as occurred during the birth. Doe did not, however, file a grievance related to shackling at any time, including for any of those pre-birth appointments. This argument ignores the bounds of Doe's shackling claim. It is limited to her hospitalization for the childbirth itself, and does not even mention any prior pre-natal care or subsequent post-partum outpatient checkups. (Docket #104 at 10-13). The PLRA does not require Doe to grieve issues which are not part of her lawsuit. *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006) (exhaustion must be analyzed for each discrete event or harm, even when those events or harms may form a connected timeline).

Nevertheless, Doe explains why she did not file a shackling-related grievance prior to the birth. She states that,

> as a factual matter, there was no reason for Plaintiff to believe that being shackled during a prenatal visit for an ultrasound or blood test—however inhumane that might be—meant she would be shackled during active labor. Shackling a woman who is in active labor poses so many greater risks to mother and child, and is so extreme in comparison to typical medical care during childbirth, that few people would ever imagine the practice even existed. . . . But even if Plaintiff had imagined or

> feared that she might be shackled during her labor, the PLRA does not require prisoners to pre-grieve their fears.

(Docket #183 at 12-13). The Court questions whether this is entirely accurate; Doe cites no precedent for the final sentence of the quoted passage. If Doe had known that the shackling policy would be applied to her during the birth, Defendants might have a good basis to argue that under *White*'s rule, a viable remedy, namely changing the policy, was available to her via the grievance process prior to suffering the alleged harm.

However interesting it may be, the Court need not dwell on the point for two reasons. First, Defendants had an opportunity to explore this argument in their reply brief but chose not to. *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990) ("This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case."); *Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir. 1989). Second, even if they had, Defendants' factual presentation would not carry their burden of proof on the matter. Defendants note that all inmates are provided a handbook when they enter the Jail. (Docket #184 at 2). The handbook, though, says nothing about shackling during hospitalizations. *See generally* (Docket #178-1). Defendants' factual briefing does not mention the shackling policy; instead, it is cited only by Doe. (Docket #181-5). Defendants do not state whether Doe ever received notice of the policy, and if so, to what extent its effect was explained to her. Without showing that Doe knew of the policy's strict, non-discretionary nature, Defendants cannot colorably claim that she should have pre-grieved the policy before the birth hospitalization.

Returning to *White*, Defendants further contend that while White proceeded alone, Doe posed as a class representative on the shackling issue until the day the instant motion was filed. They maintain that if Doe had filed

a shackling grievance, this would have afforded the Jail an opportunity to address the shackling policy for any class members whose claims arose after Doe's. In that way, Doe's grievance would be of direct value to her as the class representative; she would not be a mere ombudsman for those other women. Though the timing is close, it is indisputable that as of the moment Defendants' filed this motion, Doe abandoned the class posture of her complaint. (Docket #172) (notice from Doe stating that she would proceed on her shackling claim on an individual basis, filed at 12:50 p.m. on March 20, 2017); (Docket #173) (Defendants' summary judgment motion, filed at 3:00 p.m. on March 20, 2017). Defendants' argument is thus of no moment; as held in *White*, Doe need not act in the interest of others allegedly harmed by the shackling policy. *White*, 800 F.3d at 395.[2]

Relatedly, Defendants also claim that one of the remedies Doe desires in this lawsuit is to change to the Jail's shackling policy, and a grievance from her could have effected such a change. Defendants' position again ignores Doe's claim and *White*'s command. Doe's complaint requests money damages and never mentions an injunction, which would be necessary to compel a change in Jail policy. *See generally* (Docket #104). And, proceeding as an individual, *White* holds that Doe is not required to grieve the shackling policy for the potential future benefit of others. *White*, 800 F.3d at 396.

Defendants' other citations also fail to alter the course set by *White*. Their first is *Hernandez*. *Hernandez v. Dart*, 814 F.3d 836 (7th Cir. 2016). Hernandez, in the custody of the Cook County Sheriff's Office, was subjected

---

[2]This finding has no effect, however, on the relevance of Defendants' argument in the context of the new, separate class action filed on March 14, 2017 regarding the shackling issue. *Hall v. County of Milwaukee et al.*, No. 17-CV-379-LA (E.D. Wis.). Perhaps it would be of value there, but that is a matter for a different court and a different day.

to a hospital shackling policy similar to that employed by the Jail. *Id.* at 839. He claimed that the shackling impeded his recovery from injuries sustained in a car accident. *Id.* Hernandez orally complained about being shackled but never filed a written grievance until after his hospitalization ended. *Id.* The Cook County grievance policy required grievances to be filed within fifteen days of the incident complained of, and provided for an appeals process. *Id.* The district court held that Hernandez had not exhausted his administrative remedies and dismissed the case. *Id.* at 840.

The Court of Appeals reversed. *Id.* Like *White*, the court concluded that no administrative remedies were "available" to Hernandez regarding his shackling claim. *Id.* at 842. Specifically, while hospitalized, no one told Hernandez about the grievance process or gave him an inmate handbook which explained it in writing. *Id.* at 843. The grievance policy was thus unknown to Hernandez, and so he need not have complied with it. *Id.*

Defendants distinguish Doe from *Hernandez* because she was fully aware of the Jail's grievance procedure. This is not the relevant question. As discussed above, Defendants have not shown that she knew of the full contours of the shackling policy, including that it would be applied to her during labor and delivery without exception. Without this knowledge, Doe could not be expected to "pre-grieve [her] fears." (Docket #183 at 13).

Defendants' second citation is *Ross*. *Ross v. Blake*, 136 S. Ct. 1850 (2016). They claim that *White* "purports to authorize district courts to create 'special circumstances' exceptions to the exhaustion requirement under the PLRA," and that this "is no longer good law under *Ross*." (Docket #185 at 5). A careful reading of *Ross* reveals that not only is this proposition incorrect, but if anything, *Ross* supports *White*'s theoretical approach.

Shaidon Blake ("Blake"), the *Ross* plaintiff, sued two prison guards, one for assaulting him, and the other for standing idly by while he was beaten. *Ross*, 136 S. Ct. at 1855. Blake did not attempt to use the prison's grievance process because an internal investigation had already been opened on the matter (which ultimately led to the assaulting guard's resignation). *Id.* The district court dismissed the case for failure to exhaust administrative remedies, holding that internal investigation did not relieve Blake of his duty to follow the grievance procedure. *Id.* The Fourth Circuit reversed, agreeing with the Second Circuit that a "special circumstances" exception exists to the PLRA's exhaustion requirement. *Id.* at 1856. One such circumstance occurred when a "a prisoner reasonably—even though mistakenly—believed that he had sufficiently exhausted his remedies." *Id.* (quotations omitted). As applied to Blake, the Court of Appeals concluded that he reasonably thought the ongoing internal investigation eliminated the need for him to file a grievance. *Id.*

The Supreme Court reversed the Fourth Circuit on its holding that a "special circumstances" exception exists. *Id.* The PLRA's exhaustion language is mandatory. *Id.*; 42 U.S.C. § 1997e(a) ("**No action shall be brought** with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted.") (emphasis added). *Ross* contrasted this language with that from the predecessor to the PLRA, which contained a "weak exhaustion provision" subject to much interpretation and discretion. *Ross*, 136 S. Ct. at 1857-58 (quoting *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).

"Yet our rejection of the Fourth Circuit's 'special circumstances' exception does not end this case," *Ross* continued, "because the PLRA contains its own, textual exception to mandatory exhaustion." *Id.* at 1858.

This is the "availability" provision found at the end of Section 1997e(a). *Id.* Logically, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* In *Ross*'s view, "available" grievance procedures "are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

*Ross* then "note[d] as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* The first circumstance arises when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* This occurs, for example, when inmates get a "run-around" by being commanded to direct their grievances to a certain person, who then disclaims an ability to hear them. *Id.* The second circumstance arises when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* This goes beyond the invalid "special circumstances" test, allowing that "when a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* The final circumstance raised by *Ross* comes when prison officials actively "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The *Ross* Court found all three circumstances were in play in Blake's scenario. The evidence before the Court suggested that the internal investigation process cut off Blake's ability to obtain relief via a grievance. *Id.* This was made altogether more confusing because, while in Blake's case the state argued that this was not true, in prior prisoner litigation it had asserted the opposite. *Id.* at 1860-61. Taken together, these conflicting positions revealed the possibility that prisoners were intentionally provided vague

information so as to hinder their progress through the grievance process. *Id.* at 1861. The Court remanded the issue of the "availability" of Blake's remedies for further consideration in light of a more complete evidentiary picture. *Id.* at 1862.

*Ross* confirms that *White* remained within the recognized bounds of PLRA remedy exhaustion jurisprudence. *White* did not craft a new exception to the exhaustion requirement apart from the PLRA's text. As both opinions note by citation to *Booth*, a remedy is only "available" when it offers "some relief for the action complained of." *Booth*, 532 U.S. at 738; *Ross*, 136 S. Ct. at 1859; *White*, 800 F.3d at 395. *White* concluded that no remedies were "available" to White for potential exhaustion because a grievance would have no effect in her circumstances. *White*, 800 F.3d at 394-96. As discussed above, *White* applies directly to Doe's case and so the same result must be reached.

Defendants correctly state that Doe's scenario does not fit neatly into the three "unavailability" circumstances announced by *Ross*. The Jail's grievance procedures appear clear enough, and there is no evidence of prison officials' interference with any grievance filing (save, arguably, for Thicklen's actions). However, *Ross* held that the circumstances it discussed were "as relevant" to Blake's suit; it did not say that those three were the *only* circumstances wherein "unavailability" could be found. *Ross*, 136 S. Ct. at 1859. *Ross* thus leaves room for *White*, and this Court cannot interpose itself between the Seventh Circuit and the Supreme Court. Put differently, the Court must take *White* at its word; if *White* says its holding is grounded in "availability," and not some judicially-created exception, this Court cannot

conclude otherwise. Further, *Ross* and *White* are so factually disparate that the Court is unable to conclude that *White* has been abrogated.

Throughout their briefs, Defendants cite Supreme Court precedent arising prior to *White*, asking the Court to interpret and rely directly on those cases instead of *White*. *See Porter*, 534 U.S. 516; *Booth*, 532 U.S. 731. *White*, however, cited those decisions and distinguished them. *White*, 800 F.3d at 395-96. The Court is not at liberty to reassess *White*'s interpretation of those cases or question the wisdom of the rule it announces. *Ross* was Defendants' only avenue to avoid *White,* but as described above, it does not foreclose the Seventh Circuit's position. *White* remains controlling precedent, and the Court must therefore decline Defendants' invitation to disagree with it.[3]

5.  **CONCLUSION**

It is important to recall that the failure to exhaust administrative remedies is a defense Defendants' bear the burden to prove. *Westefer*, 422 F.3d at 577. Through an inability to avoid *White*'s clear command, they did not carry that burden. The Court must, therefore, deny their request for summary judgment on this defense. The parties have now had more than

---

[3]*White* also posed an alternative ground for finding that White's remedies were "unavailable." The grievance procedure applicable to her had no deadline. *White,* 800 F.3d at 396. White was transferred from the institution only four days after returning from the hospital. *Id.* Without a deadline, and without knowing that she would be transferred (grievances were not allowed post-transfer), White could not be faulted for failing to submit a grievance in that short window. *Id.* at 397. The Court of Appeals further held that even if she knew of the impending transfer, a four-day deadline was "unreasonably short for a woman who had just given birth to a severely impaired child." *Id.*

The parties delve deeply into this alternative discussion, arguing the factual similarities (or dissimilarities) between White's and Doe's situations. It is unnecessary to follow the parties along this path, as *White*'s primary holding provides ample support for the outcome here.

ample opportunity to present dispositive motions to the Court on any issues they desired. In light of the approaching trial date, no further dispositive motions will be permitted. The Court will also grant the parties' motions to seal certain confidential records found in their summary judgment submissions. (Docket #176 and #180).

Accordingly,

**IT IS ORDERED** that the motion for summary judgment of the defendants County of Milwaukee and David A. Clarke, Jr. (Docket #173) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the parties' motions to seal (Docket #176 and #180) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 5th day of May, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge