UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHONDA MARTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 14-CV-200-JPS |
| COUNTY OF MILWAUKEE and, XAVIER D. THICKLEN | ) ) Hon. J.P. Stadtmueller |
| Defendants. | ) ) ) |

**COUNTY OF MILWAUKEE'S MOTION TO STAY POST-TRIAL PROCEEDINGS PENDING RESOLUTION OF COVERAGE DISPUTES AND CONFLICTS OF INTEREST**

Defendant, County of Milwaukee (the "County"), by its attorneys, Paulette A. Petretti and Darcee C. Williams of the law firm Scariano, Himes and Petrarca, Chtd., respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 62(b), to stay post-trial proceedings in the above-captioned civil rights case filed by Shonda Martin (the "*Martin* Lawsuit") pending resolution of coverage disputes and conflicts of interest. In support of this Motion, the County states the following:

1. Insurance coverage disputes between the County and Wisconsin County Mutual Insurance Corporation ("WCMIC") have arisen and ripened following the jury verdict in the *Martin* Lawsuit. In sum, following the $6.7 million verdict rendered on June 7, 2017 (Doc. No. 259)[1], WCMIC is now denying that it will indemnify the County for the judgment as rendered, based on the post-verdict invocation of policy exclusions. The County maintains these exclusions were not timely and not properly reserved. Significantly, even if they had been properly reserved, WCMIC's attempts to avoid coverage obligations by imputing the intentional conduct of one

---

[1] Documents appearing on the *Martin* Lawsuit Docket Sheet will be cited as "Doc. No. ___."

1

insured, Defendant Correctional Officer Xavier D. Thicklen, ("Defendant Thicklen"), against another insured, the County, are expressly prohibited by WCMIC's policy.

2. The *Martin* Lawsuit, which names the County as one of the defendants, has been pending before this Court since February 21, 2014.

3. At all times relevant, since February of 2014, the County has been provided insurance coverage for the *Martin* Lawsuit under a Public Entity Liability Insurance Policy issued from WCMIC for the policy period January 1, 2013 to January 1, 2014. *See* Affidavit of County of Milwaukee Corporation Counsel Margaret Daun ("Daun Affidavit"), attached to the County's Motion for Leave to File a Cross Claim Against WCMIC ("Cross Claim Motion")[2] as Exhibit B, ¶ 4. Corporation Counsel Daun oversees all pending litigation, including the *Martin* Lawsuit. *Id.* at ¶¶ 2,3.

4. For over three and one-half years, throughout the litigation and adjudication of all substantive motions and through the trial of this case, from on or about February 27, 2014 to June 8, 2017, WCMIC provided defense and coverage to the County without notice of any reservation of rights to the Office of the Corporation Counsel. *Id.,* ¶ 8.

5. At all times relevant, since March 4, 2014, the County has been represented by Defense Counsel appointed by WCMIC. Assigned counsel include Charles Bohl, Andrew Jones, Karen Tidwall, Timothy H. Posnanski, Kurt Simatic and Paul D. Cranley, all of the law firm Husch Blackwell. *Id.,* ¶ 5.

---

[2] Concurrently with the filing of this Motion to Stay Post-Trial Proceedings, the County is filing a Motion for Leave to file a Cross Claim Against WCMIC, Motion to Vacate the Orders Granting Final Judgment Against WCMIC, and Motion for Leave to File Instanter Additional Attorney Appearances, all of which are incorporated herein by reference as if set forth in their entirety.

2

6. On June 8, 2017, the day after the verdict, the Corporation Counsel learned for the first time that WCMIC would deny coverage for the $6.7 million judgment as rendered. Notably, the Corporation Counsel learned this critical information third hand. In fact, WCMIC did not notify the Corporation Counsel, but instead sent an abrupt and cursory email to the County's Risk Management Director, with no notice to the Corporation Counsel. *Id.,* ¶ 9. Upon learning of this drastic notification from the Risk Manager, the Corporation Counsel requested a direct channel with the County's insurer to confirm coverage issues. WCMIC did not agree to participate in a telephone conference until June 28, 2017. That same day, Corporation Counsel Daun emailed correspondence to both WCMIC and its Defense Counsel explicitly stating the County's expectations and understanding of insurance coverage for the *Martin* Lawsuit, based on policy provisions, as well as WCMIC's and Defense Counsel's communications, conduct and representations throughout the course of the litigation. The County held the belief that it would have full coverage without any reservation of rights. This understanding was based, in part, on the fact that WCMIC did not raise a coverage dispute with the County before this Court when it had the opportunity to do so as an intervenor disputing coverage for Defendant Thicklen. By its agents' own admissions, WCMIC's failure to disclose coverage issues concerning the County at the time of its intervention was done with the purposeful knowledge that, if necessary, it would use any rulings in WCMIC's favor regarding coverage to Defendant Thicklen to dispute coverage for the County. *Id.,* ¶ 24.

7. In response to the Corporation Counsel's correspondence, on June 29, 2017, WCMIC asserted its position that indemnification of the verdict, as it now stands, would not be within coverage. WCMIC's denial of coverage to the County was based on the application of this Court's coverage ruling concerning Defendant Thicklen. WCMIC seeks to impute Thicklen's

3

intentional conduct in violation of the penal code to the County for purposes of barring coverage. *Id.,* ¶ 25. Among other challenges to WCMIC's coverage position, the County maintains imputation of intentional misconduct from one insured to another is prohibited by the express terms of the policy.

8. In further response to the County's correspondence, on June 30, 2017, Charles Bohl and Andrew Jones notified the County for the first time: "We regret that a dispute concerning coverage has arisen between WCMIC and Milwaukee County. Given the tripartite relationship under Wisconsin law, Husch Blackwell needs to remain neutral on coverage issued to avoid any suggestion that we are assisting one party against the other." *Id.,* ¶ 26.

9. Husch Blackwell never provided notice to the County of this conflict of interest at any time during the pendency of the litigation. Husch Blackwell never notified the County of any need to be neutral with regard to coverage issues. Accordingly, for the three years during which coverage issues were pending before this Court with intervenor WCMIC, the County was effectively unrepresented by counsel. The County had no attorneys protecting its insurance coverage interests and was completely unaware that it was not covered. *Id.*, ¶ 27.

10. Although the County had no coverage counsel working on its behalf, ironically, the County was the hapless victim of WCMIC, who was improperly charging WCMIC's coverage attorneys' fees to the County. Within the last few days, it was brought to the Corporation Counsel's attention that WCMIC charged the County for the attorneys' fees and costs paid to WCMIC's intervention coverage counsel, Lori Lubinsky and her associates, to pursue declaratory relief on coverage issues related to Defendant Thicklen. WCMIC slipped thousands of dollars of billing into the *Martin* Lawsuit litigation invoicing, without any notice to the County. Therefore, the County has unknowingly funded WCMIC's declaratory judgment litigation, the rulings from

4

which WCMIC's is now seeking to use as a bar to coverage for the County. Daun Affidavit, Exhibit B, ¶ 28.

11. Throughout the litigation of the *Martin* Lawsuit, WCMIC has exercised dominion over the County's defense. At all times during the pendency of the Martin lawsuit, WCMIC has exclusively controlled all strategies and elements of the *Martin* litigation including: (a) WCMIC and WCMIC's agents selected outside Defense Counsel on behalf of the County; (b) they instructed Defense Counsel as to trial and motion practice strategies; (c) they maintained complete control over the presentation of the County's defense before the jury, including the selection of which witnesses to present, the rejection of the opportunity to call adverse witnesses, the preparation of direct and cross-examinations for the Plaintiff's witnesses and the County's single witness; (d) they controlled the selection of exhibits to be introduced and the legal arguments to submit to the Court during the course of trial; (e) they had complete control over the decisions to reject settlement negotiations, to deny settlement offers and to refuse to make any counter-offers; (f) they exercised unilateral control over coverage decisions, including the decision to issue a reservation of rights to Defendant Thicklen and the decision to withhold issuing a reservation of rights to the County; (g) they decided to intervene, without any notice to the County, and to limit assertion of coverage claims to Defendant Thicklen; (h) they made the decision to covertly bill the County for attorneys' fees and costs to build WCMIC's case to obtain a judicial determination on which WCMIC could deny coverage to the County; (i) they exercised sole authority over the representations to the Court about the need for a final judgment as to coverage for Defendant Thicklen, which WCMIC knew at the time could impact its coverage obligations to the County; and (j) they carried forth with adjudication of coverage issues without ever disclosing any

reservation of rights to the County and without ever informing the County that the County had no legal representation with regard to coverage issues before this Court. *Id.,* ¶¶ 22-30.

12. In its capacity as an insured under the WCMIC policy, the County was placed in a passive role by WCMIC and its Agents, who made it clear that the County's sole role was to cooperate with WCMIC and Defense Counsel. At all times, the County has honored the duty to cooperate fully and completely with WCMIC. However, the County has now learned that WCMIC and its agents have abused the County's trust and cooperation, resulting in potential liability and exposure to excessive and unforeseen damages.

13. The County seeks a stay of post-trial proceedings to seek resolution of the pending coverage disputes and to examine the impact that Defense Counsel's conflicts of interest have had on the outcome of this case. The County maintains a stay is warranted to determine whether interlocutory relief may be appropriate. A stay will allow the County to explore whether the manner in which WCMIC undertook the claims handling of the *Martin* Lawsuit on behalf of the County unfairly tainted the outcome of the *Martin* Lawsuit to favor WCMIC to such an extent that reversal and retrial is required. WCMIC's bad faith breach of policy provisions including, but not limited to, WCMIC's duty to settle within policy limits, as well as the recent revelation that the assigned Defense Counsel appeared and defended despite an inherent conflict, which was never disclosed until after the jury trial, all need to be addressed to determine the extent these coverage issues impacted the outcome of the proceedings.

14. Federal Rule of Civil Procedure 62(b) provides:

> **(b) Stay Pending the Disposition of a Motion.** On appropriate terms for the opposing party's security, the court may stay the execution of a judgment—or any proceedings to enforce it—pending disposition of any of the following motions:
>
> **(1)** under Rule 50, for judgment as a matter of law;

**(2)** under Rule 52(b), to amend the findings or for additional findings;

**(3)** under Rule 59, for a new trial or to alter or amend a judgment; or

**(4)** under Rule 60, for relief from a judgment or order.

Fed.R.Civ.P. 62(b).

15. Concurrent with this Motion, the County has filed a Fed. R. Civ. P. 60(b)(3) Motion to Vacate the Orders Granting Final Judgment to Intervenor Wisconsin County Mutual Insurance Corporation. Additionally, the County is seeking leave to file Cross Claims against WCMIC. The facts discovered with regard to adjudication of those pending motions and the outcome of the motions may serve to provide grounds for the reversal of the jury verdict.

16. In light of the foregoing, the County seeks an order granting its Motion for Leave to Stay Post-Trial Proceedings Pending the Resolution of Coverage Disputes and Conflicts of Interest. A copy of the Proposed Order is Attached hereto as Exhibit A and will be submitted for the Honorable Judge J.P. Stadtmueller's consideration via his proposed order email: StadtmuellerPO@wied.uscourts.gov.

17. This motion is not being brought for purposes of delay or for any unlawful purpose.

WHEREFORE, Defendant, County of Milwaukee, respectfully requests that this Court enter an order granting the County of Milwaukee Motion to Stay Post-Trial Proceedings.

                                    Respectfully submitted,

                      By:   s/ Paulette A. Petretti
                           Counsel for County of Milwaukee

PAULETTE A. PETRETTI, Wisconsin ID 1038440
DARCEE C. WILLIAMS
SCARIANO, HIMES AND PETRARCA, CHTD.
180 North Stetson, Suite 3100
Chicago, Illinois 60601-6714
312-565-3100 ext. 245

G:\WP51\COMMON\MUNICIPAL\MILWAUKEE COUNTY (PAP)\MARTIN COVERAGE - 0025162\Motions\pp.Milwaukee County's Motion for Stay.docx

7

Case 2:14-cv-00200-JPS   Filed 07/26/17   Page 7 of 7   Document 273