UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHONDA MARTIN,

    Plaintiff,

vs.

Case No. 14-CV-200-JPS

COUNTY OF MILWAUKEE and
XAVIER THICKLEN,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY EXECUTION ON JUDGMENT AND WAIVE SUPERSEDEAS BOND

### INTRODUCTION

Milwaukee County seeks an order from this Court staying execution on the Judgment entered on September 28, 2017 (ECF No. 304) and waiving any requirement that the County post a supersedeas bond until the final resolution of this case.

This Court should exercise its inherent discretion to grant the requested relief. The County has ample liquid assets, has numerous places from which to draw funds, and has a simple process for authorizing payment of the County's liabilities once they are finally adjudicated. There is little risk the County will be unable to pay the Judgment if it is unsuccessful on appeal and should no insurance be available to the County, and requiring it to post a bond would therefore not be a judicious use of public monies.

In the alternative, this Court should stay execution on the Judgment without requiring a bond pursuant to Fed. R. Civ. P. 62(f). The Judgment, if docketed properly, would operate under Wisconsin law as a lien on the County's real property. In turn, a Wisconsin state court has discretion to fashion relief, but need not require a bond to stay judgment enforcement. A Wisconsin court would likely stay enforcement of the Judgment because, in addition to the reasons set forth above, the County has a meritorious appeal, and it is unlikely the County would be able to recover any monies paid to the plaintiff if it is required to pay the Judgment in advance

of the resolution of its appeal. Moreover, it is in the public interest to protect public monies until a final resolution of the case occurs.

For one or both of these reasons, this Court should stay execution on the Judgment and waive any requirement of a supersedeas bond pending the final resolution of this case.

## RELEVANT FACTUAL BACKGROUND

### A. Brief Procedural History.

This case is a civil rights suit brought by plaintiff, Shonda Martin, against the County and defendant Xavier Thicklen. This case was tried to a jury in June 2017. The jury returned a verdict on June 7, 2017 and awarded $6.7 million in favor of the plaintiff and against defendants. (ECF No. 259.) On September 28, 2017, this Court entered a final judgment against the County and Thicklen in the amount of $6.7 million (the "Judgment"). (ECF No. 304.) On October 25, 2017, the County timely filed its Notice of Appeal. (ECF No. 306.)

### B. The County's Payment Procedure and Ability to Pay the Judgment.

The County maintains its books in accordance with Generally Accepted Accounting Principles (GAAP), and it produces an audited financial statement each year called a Comprehensive Annual Financial Report (CAFR). The most recent CAFR was produced for the County's fiscal year end dated December 31, 2016. (Declaration of Scott Manske ("Manske Decl.") ¶ 3.)

The County is authorized to hold cash and investments, issue debt, levy for taxes, maintain accounts, pay bills, enter into contracts, and hold reserves. As of December 31, 2016, the County had $131 million of cash that was unrestricted and held for the payment of liabilities and to maintain reserves. As of December 31, 2016, the County's total fund balance, held in governmental funds, was $211 million, including the Debt Service Reserve funds referenced below. The CAFR for the County's fiscal year ending December 31, 2017 will not be completed until July 2018, but the amount of unrestricted cash and the total fund balance as of December 31, 2017 are projected to be in excess of $200 million. (*Id.* ¶ 4.)

Absent insurance, the first funds the County uses to satisfy judgments are its contingency funds. The County budgets for expenditure appropriations of nearly $1.1 billion annually. For the past several years, including for 2018, the budget includes an appropriation for contingencies of $5 million or more. (*Id.* ¶ 6.)

If no or insufficient contingency appropriations are available, and no surpluses are available elsewhere in the budget, then with a 2/3 vote of the County Board, funds from the County's Debt Service Reserve may be used to satisfy a judgment. There is currently $34.6 million available in this Reserve. (*Id.* ¶ 7.)

In addition to these other funding sources, the County has a Risk Management Fund which held $18.7 million at the end of fiscal year 2016, which is nearly the same as the amount in the fund at the end of fiscal year 2015. The Risk Management Fund is currently projected to be roughly at the same levels at the end of the current fiscal year on December 31, 2017 as it was at the end of 2016. These funds could also be used to satisfy the Judgment upon approval by the County Board. (*Id.* ¶ 8.)

If none of these other funding sources are available or approved, and the County does not have sufficient funds available in its then current budget to pay a judgment, the County can still satisfy the judgment by issuing tax anticipation notes, as authorized by Wis. Stat. § 59.60(9)(b). Historically, due to the County's positive cash position, the County has not issued tax anticipation notes in a year in which expenditures exceed revenues. Instead, the County has carried a deficit forward to the subsequent budget, where it must be funded. The County will not need to liquidate illiquid assets (by selling real estate, for instance) or levy additional taxes to raise the funds necessary to satisfy the Judgment in this case. (*Id.* ¶ 9.)

Demands for payment of Milwaukee County's financial liabilities, such as a judgment against Milwaukee County, are presented to the Milwaukee County Board ("County Board"), which generally meets monthly and could meet in a special session, if necessary. The County Board determines what funds to allocate to satisfy the judgment from the funds identified above,

and then votes to authorize the Comptroller's office to issue a payment to satisfy the judgment. The County Board's authorization process typically takes less than one month, excepting a veto by the County Executive. (*Id.* ¶ 10.)

The Comptroller's office is responsible for issuing payments to satisfy Milwaukee County's financial liabilities. Once it receives authorization as described above, the process for paying a judgment is minimal. If tax identification information is provided for the person to whom payment is being made, usually a check can be requested and paid by the Treasurer within two to three days of the request. (*Id.* ¶ 11.)

## ARGUMENT

### I. A BOND IS NOT NECESSARY TO SECURE PAYMENT OF THE JUDGMENT IF THE COUNTY'S APPEAL IS UNSUCCESSFUL.

A party appealing a final judgment is entitled to an automatic stay of execution of the judgment if it gives a supersedeas bond. Fed. R. Civ. P. 62(d). "[T]he reason for an appeal bond is to give the plaintiff security while execution is postponed." *N. Ind. Pub. Serv. Co. v. Carbon Cty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986). However, a court has the discretion to implement a stay of execution on a judgment without requiring a bond. *See*, *e.g.*, *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988) (citing *N. Ind. Pub. Serv. Co.*, 799 F.2d at 281). In doing so, the Seventh Circuit instructs a court to look at the following factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904-05 (internal citations and quotation marks excluded).

Milwaukee County was issued an insurance policy for the calendar year 2013 by the Wisconsin County Mutual Insurance Corporation with an insurance limit of $10 million, subject to the terms, conditions, and exclusions of the policy. (Manske Decl. ¶ 5.) As this Court is aware, a dispute exists between the County and WCMIC as to the availability of said policy to

pay the Judgment in this action. Regardless of the resolution of that dispute, however, a bond is unnecessary to give plaintiff security while execution on the Judgment is postponed. If coverage is deemed to exist under the policy, then the proceeds of the policy will be available to pay the Judgment and any question as to the County's ability to independently satisfy the Judgment will be moot. If coverage is deemed to not exist, and Milwaukee County is required to pay the Judgment itself, the first four factors of the *Dillon* test weigh in favor of waiving the supersedeas bond, and the fifth factor need not be considered.

The first factor weighs in favor of waiving the requirement of a bond because the collection process from the County is not complex. Assuming the County were to pay the Judgment itself (rather than its insurer), the collection process contains only two steps: (1) the County Board must determine from where to allocate funds to satisfy the Judgment, and then vote to authorize payment; and (2) the County Treasurer must cut the check. (*See* Manske Decl. ¶¶ 10-11.)

The second factor also weighs in favor of waiving the bond, because the collection process would not take an extended period of time. Again, assuming the County was to pay the Judgment itself, the County Board meets monthly and could meet more quickly in a special session, if necessary. The County has a variety of funds from which to draw to satisfy any financial liability, and once the County Comptroller is authorized to issue payment, the Treasurer can typically issue the payment within a few days. (*See generally id.*)

The third factor likewise weighs in favor of waiving the bond because the County has ample assets and numerous funds from which to draw to satisfy the Judgment (again assuming *arguendo* that it, rather than its insurer, is required to pay the Judgment). There are a variety of places from which the County Board can draw funds, including the contingency funds in the current budget, other surpluses in the current budget, the Debt Service Reserve, the Risk Management Fund, by issuing tax anticipation notes, or by carrying a deficit into the next budget year and drawing on its roughly $200 million plus in governmental funds. (*See generally id.*)

The County has sufficient liquid assets from which to draw to satisfy the Judgment. In contrast, the County will not need to liquidate illiquid assets, such as by selling real estate, or levy additional taxes to raise the funds necessary to satisfy the Judgment in this case. (*See id.* ¶ 9.) In short, there should be no concern over the County's ability to pay the Judgment if it ultimately is required to do so.

The fourth factor also weighs in favor of waiving the bond. In light of the County's clear ability to pay the Judgment as shown above and in the accompanying Manske declaration, a supersedeas bond to stay execution of the judgment pending the results of the appeal would be an unnecessary and unwarranted expenditure of taxpayer funds. (*See generally id.*)

And, finally, the fifth factor is inapplicable because, as is shown above, the County is not in a precarious financial situation. (*See generally id.*)

Accordingly, under the standard articulated in *Dillon*, a supersedeas bond is unnecessary to provide assurance that plaintiff will be able to enforce the Judgment if the County's appeal is unsuccessful. This Court should exercise its discretion to stay execution on the Judgment without requiring a supersedeas bond from the County.

## II. THE COUNTY IS ALSO ENTITLED TO A STAY PURSUANT TO RULE 62(F).

"If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Fed. R. Civ. P. 62(f).

In Wisconsin, "[e]very judgment properly entered in the judgment and lien docket showing the judgment debtor's place of residence shall, for 10 years from the date of entry, be a lien on all real property of every person against whom the judgment is entered which is in the county where the judgment is rendered, except homestead property that is exempt from execution under s. 815.20, and which the person has at the time of the entry or which the person acquires thereafter within the 10-year period." Wis. Stat. § 806.15(1).

MIL-28966348-2 810229/522 6
Case 2:14-cv-00200-JPS   Filed 12/15/17   Page 6 of 8   Document 321

Wisconsin courts allow a stay of a money judgment after consideration of these nonexclusive factors: (1) the likelihood of success on appeal; (2) the need to ensure collectability of the judgment and interest; (3) the ability of the appellant, if successful, to recover the money if a stay is not granted; (4) any harm to the respondent if the judgment is not paid; and (5) the public interest. *See Scullion v. Wis. Pwr. & Light Co.*, 2000 WI App 120, ¶¶ 18-25, 237 Wis. 2d 498, 614 N.W.2d 565. Wisconsin law does not require a bond to stay enforcement of a judgment. *See id.* ¶ 12 (noting that Wis. Stat. § 808.07 authorizes the trial court to stay enforcement of a judgment, including conditioning relief on posting a bond, "but it does not define the terms upon which the circuit court either must or may do these things").

Here, if plaintiff properly dockets the Judgment in the Milwaukee County Circuit Court, then by operation of Wisconsin law it will be a lien on the County's real property pursuant to Wis. Stat. § 806.15(1). Therefore, under Rule 62(f), the County "is entitled to the same stay of execution the state court would give."

A Wisconsin state court would likely allow a stay of execution on a money judgment against the County under these circumstances because each factor the Wisconsin courts consider weighs in favor of staying execution. The first factor weighs in favor of a stay because the County has a meritorious appeal. (See, *e.g.*, ECF Nos. 275-76.) The second factor also weighs in favor of a stay because there is little concern the plaintiff will be unable to collect the Judgment, with interest, if the County is unsuccessful on appeal for all of the reasons addressed in detail above. The third factor weighs heavily in favor of a stay because, if the County pays $6.7 million in taxpayer dollars to the plaintiff and then is successful on appeal, it is unlikely the County would be able to recover the money from plaintiff. The fourth factor weighs in favor of a stay because there is modest harm to plaintiff if the Judgment is not immediately paid. Plaintiff has not incurred medical expenses related to her injuries, is not subject to subrogation rights, and is currently incarcerated. To the extent there is any harm, the other factors significantly outweigh the minimal risk of this harm. Finally, the fifth factor also weighs in favor of a stay

because it is in the public interest to protect public monies until the final resolution of this case, including the appeal.

## CONCLUSION

For these reasons, the County respectfully requests an order granting this motion and staying execution on the Judgment and waiving any requirement of a supersedeas bond, together with such other and further relief as this Court deems appropriate.

Dated this 15th day of December, 2017.

s/ Andrew A. Jones
Andrew A. Jones
Timothy H. Posnanski
Karen L. Tidwall
HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
(414) 271-2300 Phone
(414) 223-5000 Fax
andrew.jones@huschblackwell.com
timothy.posnanski@huschblackwell.com
karen.tidwall@huschblackwell.com

Attorneys for Defendant Milwaukee County